# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

    v.

COREY MONROE MCKINNEY,

          Defendant.

Case No. 11-00109-CR-W-DGK

## GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW, the United States of America, by and through Tammy Dickinson, United States Attorney and Patrick D. Daly and Brian P. Casey, Assistant United States Attorneys, and respectfully submit this Sentencing Memorandum in response to some of the Defendant's objections to the Presentence Investigation Report ("PSR"). Upon consideration of the Defendant's conduct in this case, the appropriate and applicable base offense level and enhancements, and the relevant factors found under 18 U.S.C. § 3553, the Government recommends a Guidelines sentence, which is life imprisonment. In support of its position, and in advance of the sentencing hearing, the Government offers the Court the following background, authorities, and arguments:

Defendant's scheme was one of continuing escalation: the serial and private exploitation of the Minor Victim, which was eventually video recorded. This criminal practice was then extended out to ensnare an unwitting participant ("John Doe") as part of a money-making scheme, and the surreptitiously recorded video was then used to systemically extort and blackmail this same individual. Facing charges and awaiting trial, Defendant then fraudulently

induced this Minor Victim to change her under-oath testimony in an effort to escape conviction and a certain lengthy prison sentence to follow.

Defendant's conduct prescribes a life sentence. He offers no evidentiary or factual basis that rebuts the appropriate application of the various enhancements to his criminal scheme, because none exists. Defendant's conduct was squarely within the heartland of the relevant and applicable sentencing provisions contemplated by the sentencing commission and as contained in the presentence investigation report. Put succinctly, none of the relevant 3553(a) factors weigh in favor of a sentence that departs in any variation from the reasonably computed Guidelines.

I.      **Agreed Offense Level and Enhancements**

On April 8, 2011, Defendant Corey Monroe McKinney ("Defendant") was charged via criminal complaint with the production of child pornography in violation of 18 U.S.C. § 2251(a). (D.E. # 1). This complaint was replaced by a five count Indictment on April 21, 2011 (D.E. # 12), which was later replaced by a Superseding Indictment on August 30, 2011, charging Defendant with five counts of production of child pornography (Counts One to Five), sex trafficking of a minor (Count Six), Tampering with a Witness, Victim, or Informant (Count Seven), Extortion (Count Eight), and Blackmail (Count Nine). (D.E. # 24).

A jury trial commenced on January 15, 2013, and, after testimony from "John Doe," the Minor Victim, and a Government expert and co-case agent, the Defendant asked that the trial be stopped so that he could enter a plea of guilty. A lengthy change of plea colloquy was held near noon on January 16, 2013, and the Court accepted the parties' plea agreement in which the Defendant agreed to plead guilty to Counts One (production of child pornography) and Six (sex trafficking of a minor). (Plea Agreement, D.E. # 124).

2

Within the plea agreement the parties agreed to the application of a base offense level and specified enhancements, but made no further agreement as to the applicability of any other enhancements or the Defendant's criminal history. Specifically, Paragraph 10 ("Agreed Guidelines Applications") details the agreed-upon base offense levels and enhancements as stipulated by the parties before the Court:

c.     The applicable Guidelines section for Count One is U.S.S.G. § 2G2.1, which provides for a base offense level of 32;

d.     The following enhancements also apply:
Pursuant to § 2G2.1(b)(2)(A), the offense involved the commission of a sexual act or sexual contact, thus, there is a two (2) level increase;
Pursuant to § 2G2.1(b)(3), the offense involved distribution, thus, there is a two (2) level increase;
Pursuant to § 2G2.1(b)(5), since the Defendant was a legal guardian of the minor involved in the offense, and the minor was otherwise in the custody, care, control, and supervisory control of the Defendant, there is a two (2) level increase;
Pursuant to § 2G2.1(b)(b)(B)(1), the offense involved the use of a computer to elicit participation with a minor in sexually explicit conduct, there is a two (2) level increase;
The applicable Guidelines section for Count Six is U.S.S.G. § 2G1.3, which provides for a base offense level of 30;
The following enhancements also apply:
Pursuant to § 2G1.3(b)(1)(A), the Defendant was a parent/guardian of the victim, there is a two (2) level increase;
Pursuant to § 2G1.3(b)(2), the Defendant used undue influence, there is a two (2) level increase;
Pursuant to § 2G1.3(b)(3), the Defendant used a computer in the commission of the offense, there is a two (2) level increase;
Pursuant to § 2G1.3(b)(4), the offense involved commission of a sex act or sexual conduct or a commercial sex act, there is a two (2) level increase;

(Plea Agreement, D.E. # 124, ¶ 10). Beyond those particular stipulated enhancements, the parties agreed to "reserve their right to argue for or against any enhancement not listed above at the sentencing hearing." (Plea Agreement, ¶ 10(e)). This paragraph also reflects that there is no agreement as to the Defendant's criminal history (Plea Agreement, ¶ 10(f)), that the parties'

3

Guidelines estimate "does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels," and that the Court's failure to accept this Guidelines estimate does not provide a basis for Defendant to withdraw his guilty plea. (Plea Agreement, ¶ 10(g)). These basic provisions, common to many plea agreements, were also covered during Defendant's change of plea colloquy, including the Court's role in determining the ultimate and applicable Guidelines range. (*See* Trial Transcript ("T. Tr."), pp. 240-243, 265-266).

On March 12, 2013, the U.S. Probation and Pretrial Services Office prepared its preliminary Presentence Investigation Report ("PSR") and forwarded it to the parties. Defendant filed his own objections on April 18, 2013, and, after some dispute with two separate attorneys that represented him during the sentencing phase, opted to proceed *pro se*. (D.E. # 151). A final PSR incorporating Defendant's objections and the response of the U.S. Probation and Pretrial Services Office was filed on July 3, 2013. (D.E. # 152). Since his change of plea to guilty, Defendant has now attempted to withdraw his plea agreement (D.E. # 156) and arranged for a fraudulent marriage with the Minor Victim.[1]

Defendant now objects to all of the enhancements that he stipulated to in the plea agreement (Plea Agreement ¶ 10; cf. Defendant's Objections to PSR ¶¶ 49-61).[2] Beyond Defendant's stipulation, there is a strong and independent basis in both fact and law to apply each of the enhancements agreed to in the plea agreement and contemplated in the PSR. For

---

[1] The Government filed its response to Defendant's Omnibus Motion on August 1, 2013. (D.E. # 160). On August 26, 2013, the relief requested in Defendant's Omnibus Motion was denied by this Court. (D.E. # 166).

[2] Defendant advances an unclear argument as to offense grouping, and later suggests that his adjusted offense level (after he grants himself acceptance of responsibility) should be 30. Presumably, it is because he does not dispute that the base offense level for production of child pornography is 32, as provided under U.S.S.G. § 2G2.1(a).

4

most of these matters raised below, the evidence presented at trial and facts that form the basis for these enhancements are supported by the Application Notes found in the Commentary to the related sections of the United States Sentencing Guidelines ("U.S.S.G.").

### A. Commission of a Sexual Act / Sexual Contact – U.S.S.G. § 2G2.1(b)(2)(A)

Defendant suggests this two (2) level enhancement should not apply, since he and the Minor Victim "are married," that the "Defendants sexual contact was not the basis for the governments (sic) case-in-chief," and his sexual contact with her was "consensual." (Defendant's Objections to PSR ¶ 52). The evidence presented at trial demonstrated that both the Defendant and "John Doe" engaged in the commission of a "sexual act" or "sexual contact" with the Minor Victim, discrete acts which independently and separately form the basis for the application of this enhancement. Specifically, Defendant's own sexual acts and sexual contact with the Minor Victim are relevant to the child pornography charge (Count One), and Minor Victim's sexual acts and sexual contact with "John Doe" form a factual basis for the sex trafficking charge (Count Six).

As noted in Government's pre-trial MOTION IN LIMINE REGARDING ATTEMPTED USE OF "CONSENT" DEFENSE (D.E. # 107), the Eighth Circuit has recognized – in the context of a sex trafficking conviction – that "minor children could not consent to sexual contact." *United States v. Elbert*, 561 F.3d 771, 776 (8th Cir. 2009) (*citing United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003)).

The Commentary and Applications Notes for U.S.S.G. § 2G2.1 recognize that "Sexual act" and "Sexual contact" have the meaning given to these terms under 18 U.S.C. § 2246(2) & (3), which are as follows:

5

(2) the term "sexual act" means—
    (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
    (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
    (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
    (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;
(3) the term "sexual contact" means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

18 U.S.C. § 2246; cf. U.S.S.G. § 2G2.1 Commentary and Application Note 2.

An evidentiary basis to support this statutory definition of "sexual act" and "sexual contact" between the Minor Victim and both the Defendant and "John Doe" was established through the visual evidence admitted at trial (Gov't Exs. 5, 7, 9, 26-48), as well as the trial testimony of "John Doe" (T. Tr. 25-30) and the Minor Victim (T. Tr. 108-149). Moreover, this evidentiary basis was established through the Defendant's admissions during his change of plea colloquy (T. Tr. 253-54) and as contained in the plea agreement (Plea Agreement, ¶ 3).

**B.  <u>Distribution</u> – U.S.S.G. § 2G2.1(b)(3)**

Defendant objects to the application of this enhancement, suggesting that "no corroborating evidence" supports the view that he distributed the flash drive to the DeVry University security guard, who then passed it on to "John Doe" at Defendant's direction.[3]

---

[3] Despite this specious argument, Defendant later argues that it is "Prosecutorial Vindictiveness" that the fired "Security Guard from DeVry admitted to distributing Child Pornography…has not been charged" with this offense. There is no evidence whatsoever that Smith knew that the material Defendant gave him contained child pornography.

6

(Defendant's Objections to PSR ¶ 53).  Given Defendant's objection, the Government will present evidence at the sentencing hearing through John Smith, former security guard at DeVry University, that he received the flash drive in an envelope from the Defendant, who explained that this was all part of a scavenger hunt.

"Distribution" is defined by the U.S.S.G. Application Notes as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor."  U.S.S.G. § 2G2.1 Application Note (1).  Defendant was fully aware that the flash drive he provided to John Smith contained child pornography, and that he misled Smith as to the purpose of this exchange and certainly the drive's contents.  There is no evidence whatsoever that Smith was aware that the flash drive contained child pornography.  Defendant clearly transferred material containing the visual depiction of the sexual exploitation of a minor to John Smith, and arranged for its eventual distribution to "John Doe" in exchange for the demanded money.

## C.  Legal Guardian and Custody, Care or Supervisor Control – U.S.S.G. § 2G2.1(b)(5)

Arguing against this enhancement, Defendant again asserts that he is the "husband" of the Minor Victim, and that any living arrangement between the two was and is somehow consistent with the requirement of Hindu marriages.  (Defendant's Objections to PSR ¶ 54).  He further argues that she was not "under any control directly or indirectly of the Defendant," and that this enhancement should not be applied.  (Defendant's Objections to PSR ¶ 54).

U.S.S.G. § 2G2.1(b)(5) allows for a two (2) level enhancement if the Defendant was the "parent, relative, or legal guardian of the minor involved in the offense, or if the minor was

7

otherwise in the custody, care, or supervisory control of the Defendant." U.S.S.G. § 2G2.1(b)(5). The Application Notes provide further context for this enhancement:

> Subsection (b)(5) is intended to have broad application and includes offenses involving a minor entrusted to the Defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this adjustment, the court should look to the actual relationship that existed between the Defendant and the minor and not simply to the legal status of the Defendant-minor relationship.

U.S.S.G. § 2G2.1(b)(5) Application Note (3).

If "day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement," then so does the Defendant. Defendant presented himself to Center High School as the "primary residence provider and guardian" of the Minor Victim. (PSR ¶ 25; T. Tr. 92-96). Defendant also held himself out as the uncle of the Minor Victim. (T. Tr. 160). The Minor Victim stayed with Defendant under a "power of attorney" arrangement they facilitated with her mother. (T. Tr. 92-96). Defendant also admits in the plea agreement that "at all times specified in the Superseding Indictment, McKinney served as the legal guardian of CV, and was aware that she had not attained the age of 18." (Plea Agreement, ¶ 3). Under a legal guardian or "custody, care or supervisory control" analysis, this enhancement applies.[4]

---

[4] *See United States v. Beasley*, 688 F.3d 523, 535 (8th Cir. 2012) (upholding U.S.S.G. § 2G2.1(b)(5) enhancement based on "custody, care or supervisory control" prong against video game store owner because the minor victims occasionally stayed overnight with him when he "was the primary, and maybe the only, adult present," that that he would have "exercised at least as much 'care, custody, or supervisory control' over these minors as would a teacher, baby-sitter, or day care provider.")

### D. **Adjustment for Obstruction of Justice** – U.S.S.G. § 3C1.1

The PSR correctly applied the adjustment for obstruction of justice (PSR ¶ 44) based on Defendant's unlawful influence of the Minor Victim to submit a false account of the circumstances for which he was charged in this prosecution. As noted in the Commentary to § 3C1.1, this adjustment applies if:

> Defendant's obstructive conduct (A) occurred with respect to the investigation, prosecution, or sentencing of the Defendant's instant offense of conviction, and (B) related to (i) the Defendant's offense of conviction and any relevant conduct; or (ii) an otherwise closely related case, such as that of a co-Defendant."

U.S.S.G. § 3C1.1, Application Note (1).

Defendant's actions as demonstrated at trial through the introduction of numerous telephone calls and witness testimony more than suffice to establish a factual basis for this adjustment, particularly when viewed against the examples of covered conduct found under Application Note (4). Minor Victim testified at trial that the letter she sent to Defendant's previous counsel was done so at his direction and contained a number of lies elicited from his hidden communications to her. (T. Tr. 178-186).

Beyond the enhancement for Defendant's pre-trial obstructive acts, his obstructive conduct after the trial and during the preparation of the PSR provides an independent basis to impose this adjustment. Since entering his plea of guilty, Defendant has entered into a fraudulent marriage with the Minor Victim and provided numerous false statements in his objections to the PSR and his motions filed with this Court. (*See* D.E. # 156). Obstructive conduct in the course of the preparation of the PSR and during the sentencing phase is sufficient to support an adjustment for obstruction of justice under U.S.S.G. § 3C1.1. *See United States v.*

9

*Zuniga*, 488 Fed. Appx. 178 (8th Cir. 2012); *United States v. Wisecarver*, 644 F.3d 764, 773 (8th Cir. 2011); *United States v. Anderson*, 68 F.3d 1050, 1055 (8th Cir 1995).

### E.  Pattern of Activity Involving Prohibited Sexual Contact – U.S.S.G. § 4B1.5(b)(1)

The U.S. Probation Office also found that the five-point enhancement under U.S.S.G. § 4B1.5 ("Repeat and Dangerous Sex Offender Against Minors") is applicable in this case.  (PSR ¶ 59).  Defendant objects by arguing that this enhancement only applies when the Defendant has been previously convicted of another sex offense, confusing the difference in the application of U.S.S.G. § 4B1.5(a) (which contemplates a Defendant with a prior sex offense conviction) and § 4B1.5(b) (which does not require a prior sex offense conviction, but rather applies when a "pattern of activity involving prohibited sexual conduct" occurred).  (Defendant's Objections to PSR ¶ 59).

U.S.S.G. § 4B1.5(b) applies when the Defendant's instant offenses of convictions are a covered sex crime (convictions under 18 U.S.C. §§ 1591 & 2251(a) qualify based on the Application Note (2) to this provision) and the Defendant "engaged in a pattern of activity involving prohibited sexual conduct."   U.S.S.G. § 4B1.5(b).   A "pattern of activity" is established when the "Defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the Defendant engaged in prohibited sexual conduct with a minor."  U.S.S.G. § 4B1.5 Application Note (4)(B)(i).

Defendant engaged in a pattern of activity involving prohibited sexual conduct with the Minor Victim (beginning when she was 14) countless times over the course of two years leading

up to the acts that form the basis for these convictions. (T. Tr. 89-92)[5]; *see also United States v. Benais*, 460 F.3d 1059, 1062 ("The district court applied…a five-level enhancement under U.S.S.G. § 4B1.5(b) based on the fact that Benais had engaged in prohibited sex with minors on at least two other occasions…"). Defendant also admits, in his plea agreement, that, beginning in September 2010, the Minor Victim began residing with him and that he was sexually active with her at this time, and that he was sexually active with her on "numerous occasions." (Plea Agreement, ¶ 3). The evidence of this pattern of activity was shown at trial in the form of videos and images created between September 30, 2010, and March 21, 2011. (*See* Government's Exhibits 5, 7, 26-48). Defendant likely hopes that his fraudulent marriage to the Minor Victim somehow wipes away the criminality of his past, but in fact this simply underscores his ongoing control, criminal conduct, and exploitation relative to this victim.

## F. **Defendant's Requested Departures**

Throughout his objections, Defendant asserts that he is entitled to a host of adjustments which would reduce his offense level, and that he and his conduct are uniquely qualified to secure a downward departure from the computed Guidelines. None of these are based in fact or law, and none serve as a basis for the requested departure.

### 1. **Acceptance of Responsibility – U.S.S.G. § 3E1.1**

Despite proceeding to and through trial – and continuing to parse his true culpability and guilt – Defendant asserts that he is entitled to an acceptance of responsibility reduction. (Defendant's Objections to PSR ¶¶ 46-48). One of the chief factors in determining whether a

---

[5] The images and video recordings admitted as evidence at trial visually depict sexual activity between Defendant and Minor Victim on at least two discrete dates: September 30, 2010 (Gov't Exs. 5, 7) and March 21, 2011 (Gov't Exs. 26-48).

11

Defendant is entitled to an adjustment in the offense level for "acceptance of responsibility" is the "timeliness of the Defendant's conduct in manifesting the acceptance of responsibility." (U.S.S.G. § 3E1.1(a) Application Notes, 1(H)).

Defendant waited until halfway through the Government's case-in-chief, after a petit jury had been empaneled and had viewed numerous disturbing images and video of child pornography and heard testimony from two separate victims relating to the sexual exploitation of a minor. This trial came after almost two years of continuances, various hearings, and frequent changes of representation. To the extent timeliness is a consideration as to whether Defendant is entitled to an adjustment for acceptance of responsibility, his extensive delay to and through trial cuts against any reduction.

The PSR correctly applied the adjustment for obstruction of justice (PSR ¶ 44) based on Defendant's unlawful influence of the Minor Victim to submit a false account of the circumstances for which he was charged in this prosecution. The practical application of U.S.S.G. § 3C1.1 does not only increase the adjusted offense level by two (2) levels, but it also serves to deny the possibility of an acceptance of responsibility reduction. In *United States v. Hutterer*, 706 F.3d 921 (8th Cir. February 19, 2013), the Eighth Circuit held that "[o]rdinarily, a Defendant who obstructs justice is not entitled to the reduction for acceptance of responsibility," and only in "'extraordinary cases' will Defendant found to have obstructed justice 'be eligible for the acceptance of responsibility reduction.'" *United States v. Hutterer*, 706 F.3d 921, 925 (8th Cir. February 19, 2013) (*quoting United States v. Smith*, 665 F.3d 951, 957 (8th Cir. 2011)). *Hutterer* identified a "number of non-exclusive factors for the district courts to consider in deciding whether a case is 'extraordinary'" including whether:

> "the obstruction of justice was an isolated incident early in the investigation or an on-going effort to obstruct the prosecution[,] ... whether [the Defendant] voluntarily terminated his obstructive conduct, or whether the conduct was stopped by law enforcement[,] ... [and] whether [the Defendant] admitted and recanted his obstructive conduct, or whether he denied obstruction of justice at sentencing."

*Id.* (*quoting United States v. Honken*, 184 F.3d 961, 968 (8th Cir. 1999)).

This is not an "extraordinary case" as contemplated by the Sentencing Guidelines: Defendant's conduct was not isolated – in fact, it continues; Defendant's obstructive conduct was stopped – for a time – by the intervention of law enforcement and the initiation of additional charges; and Defendant has not admitted to this obstruction – he still insists his conduct was not obstructive.

Defendant's post-conviction conduct also cuts against a justification to grant an adjustment for acceptance of responsibility. Despite the knowing and voluntary entry of a guilty plea, Defendant wishes to withdraw his guilty plea and seeks another trial. (D.E. # 156). As demonstrated throughout his objections, Defendant continues to contest basic evidence and facts that were presented against him at trial. As such, there is simply no way that Defendant's post-trial behavior is consistent with "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the Defendant is accountable." (U.S.S.G. § 3E1.1(a) Application Notes, 1(A)). Beyond contesting the basic facts that form the basis for his guilt to the charges to which he pled guilty, Defendant insists that any facts that would be considered relevant conduct and support the related charges are "irrelevant" and should be removed from the PSR. (*See* Defendant's Objections to PSR ¶¶ 12, 13).

13

## 2. Specific Offender Characteristics (Chapter 5, Part H)

Defendant asserts that he is uniquely situated to an adjustment based on certain characteristics; specifically, his age, work history and skills, mental and emotional conditions, his family life, and his past military experience. Defendant offers no factual or evidentiary support for many of these assertions throughout his objections to Paragraph 118 of the PSR. None of these particular characteristics of the Defendant favor a departure in this matter.

### a. Age – U.S.S.G. § 5H1.1

U.S.S.G. § 5H1.1 states that "[a]ge may be a reason to depart downward in a case in which the Defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration." Given that he is not "elderly and infirm," Defendant fails to specify why his age is a factor that would justify a departure. (*See* Defendant's Objections to PSR ¶ 118[6]).

### b. Education and Vocational Skills – U.S.S.G. § 5H1.2

Defendant offers no factual basis or argument as to how this consideration favors a departure. (*See* Defendant's Objections to PSR ¶ 118). Relative to this factor, the Guidelines state that "[e]ducation and vocational skills are not ordinarily relevant in determining whether a departure is warranted, but the extent to which a defendant may have misused special training or education to facilitate criminal conduct is an express guideline factor." U.S.S.G. § 5H1.2. At trial, the Government presented evidence that Defendant's educational and vocational skills were actually used in some degree to facilitate the commission of these acts.[7]

### c. Mental and Emotional Conditions – U.S.S.G. § 5H1.3

Defendant offers no factual basis or argument as to how his mental and emotional condition favors a departure. (*See* Defendant's Objections to PSR ¶ 118). While he asserts "diminished capacity," there is no evidence in his mental evaluation (D.E. # 46) or

---

[6] Defendant originally objected to ¶ 119 in the PSR, which has since been renumbered and is now ¶ 118. In the interests of consistency with the final PSR, this Memorandum adapts the renumbering as reflected in the final PSR. (D.E. # 152).

[7] "John Doe" testified at trial that, while walking to the bank, the Defendant "told me that he was in the armed forces, the Navy, I -- the Navy, I believe, for several years. He has an extensive record of doing research about -- about people, finding out about people. And, you know, that he's showing [Minor Victim] how to do the same thing." (T. Tr. 40).

medical records that would form a justifiable basis for a departure. There is no "specific treatment purpose" (U.S.S.G. § 5H1.3) that would be served by a departure in this matter. The serial sexual exploitation of a minor is not the sort of self-medication that should be condoned with a downward departure.

### d. Employment Record – U.S.S.G. § 5H1.5

Defendant states that since he "has been gainfully employed or full time as a college student since 1994" a downward departure is warranted under this provision of the Sentencing Guidelines. (*See* Defendant's Objections to PSR ¶ 61). Defendant's work history is spotty if not incomplete; as noted in the PSR, he has not filed a federal tax return since 2009. (PSR ¶ 97). Defendant's employment with the United States Navy was terminated upon his resignation in lieu of a formal court-marshal. (PSR ¶¶ 95, 96).

### e. Family Ties and Responsibilities – U.S.S.G. § 5H1.6

Defendant says his "familial position is irreplaceable;" the Sentencing Guidelines says this is irrelevant. *See* Defendant's Objections to PSR ¶ 118; cf. U.S.S.G. § 5H1.5 ("In sentencing a Defendant convicted…(of) an offense under section 1591…family ties and responsibilities and community ties are **not relevant** in determining whether a sentence should be below the applicable guideline range") (emphasis added). At the time when the preliminary PSR was prepared, Defendant owed approximately $63,204 in child support payments to his ex-wife, with whom he has a documented history of domestic issues and a military order restricting his contact with her. (PSR ¶¶ 75, 103). Given the vast sums Defendant already owes in unpaid child support – and no indication that he is, would have been, or ever will be in a position to make up this balance – there is no evidence that he will cause his extensive dependents any further hardship with a lengthy incarceration.

### f. Role in the Offense – U.S.S.G. § 5H1.7

The Sentencing Guidelines succinctly state that a "Defendant's role in the offense is relevant in determining the applicable Guideline range…but is not a basis for departing from that range." *See* U.S.S.G. § 5H1.7. Regardless of this clear guidance, Defendant states a departure is warranted because the "[e]vidence known to the prosecutor show (sic) that the actions of the Defendant were those of someone who was **protecting** the victim from potential greater danger to herself." (*See* Defendant's Objections to PSR ¶ 61) (emphasis added). Defendant was shown initiating all of the recordings presented at trial and communicated directly with "John Doe" to obtain the money for the sexual activity. Left unsaid by the Defendant is how serially exploiting and distributing child pornography featuring the Minor Victim – after editing himself out of the incriminating video – qualifies as protecting this victim.

15

### g. Military, Civic, Charitable or Public Service – U.S.S.G. § 5H1.11

Defendant submits throughout his objections that his service in the military (which he alone characterizes as "exemplary") serves as a basis for a departure. *See* Defendant's letter to Kevin Lyon dated April 18, 2013. (Defendant's Objections to PSR ¶ 118). While his records would indicate that he received some general commendations during his service, any benefit from this position must be considered in light of the military discipline Defendant also received; specifically: a citation by the Navy for spousal abuse (for which he received a non-judicial punishment of 30 days restriction and 30 days extra duty) and for his resignation in the face of a court-marshal for dereliction of duty. (PSR ¶¶ 95, 96).

### 3. Other Grounds for Departure (Chapter 5, Part K(2))

Defendant also seeks departures based on various factors that he suggests are at play here: the Minor Victim's conduct, his own "diminished" capacity, and that the acts Defendant committed in this prosecution were "aberrant" to his character. None of the arguments raised in his objections are in any way compelling, persuasive, or supported by any evidence that would justify a departure based on a clear reading of the noted guideline provisions.

### a. Victim's Conduct – U.S.S.G. § 5K2.10

Defendant offers no factual nor legal argument as to how the "victim's conduct" forms a basis for a downward departure or variance. (PSR, Defendant's Objection to Paragraph 118). Among the elements of the crimes Defendant pled guilty to were that he "recruits, entices, harbors…provides, obtains or maintains" the victim (sex trafficking of a minor under 18 U.S.C. § 1591) or "employs, uses, persuades, induces, entices, or coerces" the victim (production of chid pornography under 18 U.S.C. § 2251). A victim's consent is not relevant to an analysis of these statutes.[8] As demonstrated extensively, Defendant has exercised (and continues to assert) an unusual degree of control and influence over this Minor Victim, who he has exploited since she was 14 years old.

### b. Diminished Capacity – U.S.S.G. § 5K2.13

Defendant offers no factual nor legal argument as to how he suffered from any diminished capacity, or how this forms a basis for a downward departure or variance. (PSR, Defendant's Objection to Paragraph 118). There is no evidence that he committed

---

[8] See discussion herein, quoting *United States v. Elbert*, 561 F.3d 771, 776 (8th Cir. 2009) (*citing United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003))

16

the offense while suffering from a significantly reduced mental capacity[9] or that any such incapacity contributed to the commission of this offense.

Defendant was found fully competent to stand trial and was cognizant of his actions at the time of his offenses. His mental evaluation found him with an unspecified personality disorder with heightened narcissistic and paranoid features. His only cognizable disability related to his military service is for carpal tunnel syndrome. Moreover, Defendant was fully aware of the criminality of his conduct as evidenced through numerous admissions and awareness that the illicit sexual contact with the victim – a clear minor – was prohibited by law; this formed the very basis for the exploitation and blackmail threats against "John Doe."

### c. Aberrant Behavior – U.S.S.G. § 5K2.20

Defendant asserts a "downward departure is also warranted for Abherrent (sic) behavior under 5K2.20" without offering any specific facts justifying such a departure. A departure or variance is not warranted on this basis, as the Sentencing Guidelines contemplate particular requirements for such a departure to apply. Beyond the specific enumerated bases under this Guideline provision, these criminal acts do not reflect a "single criminal occurrence or single criminal transaction" that was "committed without significant planning…was of limited duration, and…represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20(b). Put succinctly, the serial exploitation of this Minor Victim was long-ranging over the course of many, many months, the scheme involved a certain degree of premeditated planning, and Defendant has a lengthy history exploiting this minor female and engaging in abusive contact with women he considers his significant other.

## II. Government's Response to Defendant's Objections to the PSR

### A. General Response to Defendant's Objections

On April 19, 2013, Defendant filed his objections, via facsimile, to Kevin F. Lyon, Chief U.S. Probation Officer located in Jefferson City, Missouri, and by copy to the U.S. Probation Offices located in Springfield and Kansas City, Missouri. In his correspondence, Defendant appeals for leniency based on his past military service, and also asserts rights on behalf of the

---

[9] "Significantly reduced mental capacity" is defined by the Guidelines, means that defendant has a "significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful.

Case 4:11-cr-00109-DGK   Document 167   Filed 08/26/13   Page 17 of 26

Minor Victim, who he now says (and argues was at the time of these offenses) is his "wife." Since Defendant is proceeding in a *pro se* capacity, these objections were formally accepted by the U.S. Probation Office and incorporated as such into the final PSR. Additional objections submitted by Defendant's (now stand-by) counsel of record were also incorporated into the Addendum to the PSR.

Despite the specious nature of these baseless objections, and to provide for the efficient administration of the anticipated sentencing hearing where Defendant's objections will be considered by the Court, the Government addresses those arguments below and, where warranted, specifically. For ease of this Court's review of Defendant's objections, they are grouped in concert with the organization of the PSR.

### 1. <u>Offense Conduct, Victim Impact, and Adjustments</u> (Paragraphs 9-48)

Defendant's objections to these paragraphs represent his exercise in historical fiction, containing unfounded and easily disprovable allegations of discovery violations and ill-conceived complaints that his Constitutional rights were violated. Put simply, these objections and arguments are implausible to anyone with a passing familiarity with the evidence developed during this investigation and presented at trial, and are easily countered by the evidence admitted at trial through testimony and other means, addressed specifically as follows:

- **Paragraphs 9, 10, 11** – Defendant's assertions that "[t]here is no evidence presented that supports that the CI ["John Doe"] was the target of an extortion attempt relating to child pornography," was not in his apartment on March 25, 2011, and did not give any money to the Defendant is laughable to anyone that witnessed John Doe's testimony at trial, including the surveillance video and images from the U.S. Bank ATM machine recorded on March 25, 2011 (Tr. T. 31-46); Gov't Exs. 67-71, 170). All of this evidence was also introduced at trial through the direct examination of "John Doe" (Tr. T. 31-46) and Minor Victim (Tr. T. 154-156).

18

- **Paragraphs 12, 13, 14, 15, 16** – The facts contained in these paragraphs are relevant to the overall scheme and conduct of the Defendant, and provide context to the substantive charges in this prosecution. Moreover, as "John Doe" testified at trial, he was not testifying under "immunity" as Defendant repeatedly suggests. All of this evidence was also introduced at trial through the direct examination of "John Doe." (Tr. T. 46-75).

- **Paragraphs 17-18** – These paragraphs in the PSR accurately summarize the evidence gathered from DeVry University. John Smith, the since-terminated DeVry University security guard that was an unwitting accomplice in Defendant's extortionate scheme, was prepared to testify at trial and was in the courthouse on Wednesday, January 16, 2013, when Defendant opted to change his plea to guilty. Listed as a formal victim of this crime in the Victim Notification Program (VNS), Smith is prepared to testify at sentencing as both a victim and to offer factual evidence to rebut these objections.

- **Paragraphs 19-21** – The PSR accurately reflects the statements originally provided by the Minor Victim and are consistent with sworn testimony offered at trial. (Tr. T 85-156).

- **Paragraph 25** – This objection should be overruled based on Defendant's role, in some form or fashion, as a guardian over the Minor Victim by virtue of the "power of attorney" conferred on him by Minor Victim's mother and based on the relationship he used in registering Minor Victim as a student at Center High School. Evidence to this role was already admitted through testimony of the Minor Victim (Tr. T. 92-96), and Beth Heide, the principal of Center High School, was prepared to testify to the documents in support (Gov't Exs. 72-76) and will be made available to testify at the sentencing hearing to rebut Defendant's objections.[10]

- **Paragraph 27** – Defendant was fully aware of these other videos, this forensic examination and related videos were made available to Defendant and his defense team throughout this prosecution (within the statutory restrictions allowing for access of evidence containing child pornography). More specifically, investigators working on behalf of Defendant viewed the child pornography in our offices on August 30, 2012, and Defendant himself along with his trial attorneys spent two days during November of 2012 viewing the evidence. In all instances, undersigned counsel and at least one of the Government's agents were present, and walked Defendant and these investigators through all of the evidence made available in this prosecution. Moreover, Minor Victim admitted to the production of other videos and images that were produced with the knowledge, direction, and encouragement of Defendant. (Tr. T 107-122).

- **Paragraph 28** – Defendant's objection to this paragraph is uniquely bizarre, as the evidence developed during this investigation was that Defendant provided

---

[10] To the extent this objection deals with the factual basis for the "legal guardian" enhancement found under U.S.S.G. § 2G2.1(b)(5), see legal discussion herein.

the adult female, 20 years old at the time, with large amounts of alcohol prior to the recording of the video, and, as a result, she did not have any recollection of the recording of the sexual acts involved. Arguably, given these statements by the adult female, this evidence could support related criminal acts that would have been subject to a Rule 404(b) analysis. Due to the overwhelming weight of the evidence in this matter, and the peripheral nature of this sexual act compared to the charged offenses, the Government opted not to present evidence related to Defendant's potential sexual assault on a separate individual. Because of the capacity issues involved with this adult female, and the decision not to call her as a witness, no immunity agreement was ever contemplated or formalized with her.

- **Paragraph 29** – These telephone calls were played at trial and context was provided by the Minor Victim during her testimony. (Tr. T. 168-185); Gov't Exs. 96-115, 118-119, 128-129).

- **Paragraphs 30-31** – This subsequent interview with the Minor Victim was provided in the course of this prosecution. (*See* Gov't Discovery Disclosures to Defendant, bates labeled CMM000484). At trial, Minor Victim testified that her "payment" was in fact reimbursement for her trial preparation, and this was consistent with the payment provided to other victims and witnesses in the course of trial preparation. (Tr. T 182-183).

- **Paragraph 33** – Defendant characterizes adult female (identified in the PSR as "F2") as a willing participant in their sexual encounter, and there is no reason to doubt this. However, the other female "F2" certainly did not consent to the surreptitious and secret video recording of this sexual encounter by the Defendant (*See* GOVERNMENT'S NOTICE REGARDING FEDERAL RULE OF EVIDENCE RULE 404(B) EVIDENCE, (D.E. #68)). The adult female (F2) was prepared to testify at trial and was in the courthouse awaiting her scheduled testimony before Defendant entered his plea of guilty.

- **Paragraphs 35-42** – The PSR reflects a succinct and comprehensive summary of the evidence and testimony offered at trial, and there is no cognizable factual dispute found within these objections.

- **Paragraph 43** – Contrary to Defendant's assertion that "[t]here is only one victim as indicated at trial," both "John Doe" (the extortion victim) and John Smith (by virtue of the pecuniary loss he experienced by losing his security guard job) qualify as crime victims pursuant to the Crime Victims' Rights Act (18 U.S.C. § 3771), which defines a "crime victim" as a "a person directly and proximately harmed as a result of the commission of a Federal offense."

- **Paragraph 44** – Sufficient evidence was presented at trial demonstrating that Defendant unlawfully influenced Minor Victim to submit a false account of the circumstances giving rise to the charged offenses. *See also* Government's legal arguments relative to the application of this adjustment found under U.S.S.G. § 3C1.1 herein.

- **Paragraphs 45-48** – *See also* Government's legal arguments relative to the application of this adjustment found under U.S.S.G. § 3E1.1 herein.

20

## 2.  **Offense Level Computation** (Paragraphs 49-61)

Defendant's objections to the offense level computation were previously addressed within the legal arguments section.  However, to the extent these objections make any factual assertions, the Government responds as follows:

- **Paragraph 52** – Defendant's assertion that he and the Minor Victim are "married" falls apart upon close inspection.  The Government will present evidence at sentencing that this "marriage" was done so fraudulently, and does not stand up to any scrutiny under the laws of the State of Kansas (where this marriage ceremony supposedly occurred).  Specifically, the "officiating person" never stepped foot in the State of Kansas, was not at the "ceremony," and in fact signed the license while he was physically in the State of Missouri.  Regardless, there can be no dispute that there was sexual contact and a commercial sex act that formed the basis for the sex trafficking and production of child pornography charges.  (*See also* Government's legal arguments relative to the application of this adjustment found under U.S.S.G. § 2G2.1(b)(2)(A) herein).
- **Paragraph 53** – John Smith, DeVry University security guard, was prepared to testify that he received the envelope with the flash drive (that was found to contain child pornography) from the Defendant.  He will be made available to testify at the sentencing hearing to counter this objection.  (*See also* Government's legal arguments relative to the application of this adjustment found under U.S.S.G. § 2G2.1(b)(3) herein).
- **Paragraph 54** – *See* Government's Responses to Objections to Paragraphs 25 and 52.
- **Paragraph 57** – *See* Government's Responses to Objections to Paragraph 44.
- **Paragraphs 58-59** – See Government's Responses to Objections to Paragraphs 49-57; *see also* Government's legal arguments relative to the Guidelines computation (Sub-part **II. Legal Arguments Regarding Enhancements and Departures**, contained herein).

## 3.  **Criminal History Computation and Other Criminal Conduct** (Paragraphs 62-71)

The Government adopts and incorporates the Probation Officer's responses found in the Addendum to the PSR as prepared and submitted.  The Government is prepared to elicit brief testimony from the United States Probation Officers assigned to computer the Defendant's criminal history and offense conduct at the sentencing hearing.

### 4. __Offender Characteristics__ (Paragraphs 72-104)

Defendant's objections to the offender characteristics were previously addressed within the legal arguments section related to his various departure and adjustment requests. The Government adopts and incorporates the response of the U.S. Probation Office to these objections, has no supplement to these objections beyond those points advanced within the legal arguments, and reserves the right to respond and present evidence at sentencing if necessary.

### 5. __Sentencing Options__ (Paragraphs 105-118)

Defendant cannot articulate any legitimate basis for an alternative outcome for these provisions which are largely governed by statute, so instead he hurls flimsy insults at the U.S. Probation Office. Specifically, while he objects strenuously to the "Special Conditions of Supervision" that are found within PSR ¶ 111, those special conditions are contemplated and set out under U.S.S.G. § 5D1.3 and are wholly appropriate in this matter (particularly given the Defendant's use of Facebook to facilitate portions of this crime). The Government adopts and incorporates the response of the U.S. Probation Office to these objections.

### 6. __Factors That May Warrant Departure__ (Paragraphs 118-121)

Defendant's assertions relating to his desire for a departure were previously addressed within the legal arguments section. Defendant advances numerous frivolous arguments within his objection to paragraph 118, including baseless and unsubstantiated Government misconduct allegations, as well as the assertion that various other individuals disparately involved in this matter (and clueless as to the full nature of Defendant's scheme) should have been charged with child pornography offenses. As previously stated, Defendant advances no cognizable basis for

departure under the facts or law before this Court. The Government adopts and incorporates the response of the U.S. Probation Office to these objections.

## III. <u>Government's View of § 3553(a) Factors</u>

As demonstrated herein, Defendant's conduct was squarely within the heartland of the relevant and applicable sentencing provisions contemplated by the sentencing commission. To the extent the resultant offenses provide for a lengthy sentence, it was Defendant's conduct that is egregious, not the resultant outcome consistent with a fair reading of the guidelines.

Defendant's scheme was one of continuing escalation. It began with the serial and private exploitation of the Minor Victim, including sexually explicit conduct which was eventually video recorded. This criminal practice was then extended out to ensnare an unwitting participant ("John Doe") as part of a money-making scheme, and the surreptitiously recorded video was then used to systemically extort and blackmail this same individual. Facing charges and awaiting trial, Defendant then fraudulently induced this Minor Victim to change her under-oath testimony in an effort to escape conviction and a certain lengthy prison sentence to follow.

The nature and circumstances of this Defendant and his scheme prescribe a sentence of life. Even absent his criminal history, Defendant's exposure would still result in a prescribed sentence of life imprisonment. Arguably, Defendant's criminal history is underreported, as it does not fully contemplate his offenses committed during his time in the military. His criminal history also demonstrates a consistent pattern of abusive contact with women, particularly those women the Defendant considers his partner or "wife," and is consistent with the abusive conduct charged in this case.

Far from any deterrent effect one would expect from a guilty conviction, Defendant has been undeterred in attempting to extricate himself from his plea agreement and the certain imposition of a lengthy prison sentence. His post-conviction actions demonstrate just how serious the Defendant takes his conduct in this case, and his efforts while incarcerated – before and after trial – betrays his basic disrespect for the law and this Court. Defendant's obstructive conduct while awaiting trial – and his fraudulent marriage afterwards – demonstrates that not even the confines of pretrial detention and the custody of the United States Marshal Service are enough to deter the Defendant or to fully protect the public from further crimes. The Sentencing Guidelines, while advisory, exist to provide some proportionality to similarly situated individuals convicted of similar crimes, and a sentence consistent with these Guidelines is considered presumptively reasonable.

Put succinctly, none of the relevant 3553(a) factors weighs in favor of a sentence that departs in any variation from the reasonably computed Guidelines.

IV.     **Conclusion**

The Government recommends a sentence within the applicable and appropriate Sentencing Guidelines, which prescribes a sentence of life imprisonment. Upon a lengthy and extensive review of any and all applicable provisions of the statutes and the facts and circumstances of this case, there simply exists no basis for a downward departure or a consideration of the 3553(a) factors which would justify a sentence below the term prescribed by the Sentencing Guidelines.

Respectfully submitted,

Tammy Dickinson
United States Attorney

By      */s/ Patrick D. Daly*

Patrick D. Daly
Assistant United States Attorney
Charles Evans Whittaker Courthouse
400 East 9th Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on the 26th day of August, 2013, to the Electronic Filing System (CM/ECF) of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record and a copy of the foregoing was mailed to:

> Corey M. McKinney #23055-045
> CCA Leavenworth Detention Center
> 100 Highway Terrace
> Leavenworth, KS 66048
>
> and
>
> Probation Officer Jeremy Thomas
> U.S. Probation and Pretrial Services Office
> 400 E. 9th Street
> Kansas City, MO 64106

*/s/ Patrick D. Daly*

_____
Patrick D. Daly
Assistant United States Attorney